UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CORINNA H.,

                        Plaintiff,

v.                                                      8:18-CV-1256
                                                        (TWD)
COMM'R OF SOC. SEC.,

                        Defendant.

_____

APPEARANCES:                                OF COUNSEL:

SCHNEIDER & PALCSIK                          MARK A. SCHNEIDER, ESQ.
Counsel for Plaintiff
57 Court Street
Plattsburgh, NY 12901

U.S. SOCIAL SECURITY ADMIN.                  LUCY WEILBRENNER, ESQ.
  Counsel for Defendant
OFFICE OF REG'L GEN. COUNSEL
REGION II
Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## AMENDED DECISION and ORDER

Currently before the Court, in this Social Security action filed by Corinna H. ("Plaintiff")
against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to
42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and
Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 13 and 16.)  For the reasons set
forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion
for judgment on the pleadings is granted.  The Commissioner's decision denying Plaintiff's
disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I.      RELEVANT BACKGROUND

### A.      Factual Background

Plaintiff was born in 1965, making her 50 years old at her application date and 52 years old at the time of the ALJ's decision.  Plaintiff reported completing the tenth grade and obtaining a GED.  She has past work as a housekeeper.  Plaintiff initially alleged disability due to spinal stenosis, a herniated disc, nerve damage in her left leg, depression, right hip problems, and arthritis in her back, hands and knees.

### B.      Procedural History

Plaintiff applied for Supplemental Security Income on November 2, 2015.  (T. 37, 60, 174-79.) [1]  Plaintiff's application was initially denied on March 9, 2016, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  (T. 90-104.)  She appeared at an administrative hearing before ALJ Brian LeCours on November 3, 2017.  (T. 33-59.)  On January 3, 2018, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 17-32.)  On October 18, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)

### C.      The ALJ's Decision

The ALJ made the following findings of fact and conclusions of law.  (T. 22-28.) Plaintiff has not engaged in substantial gainful activity since her application date.  (T. 22)  Her lumbar degenerative disc disease and affective disorder are severe impairments.  (*Id*.)  She does not have an impairment or combination of impairments that meets or medically equals one of the

---

[1]      The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 23-24.) The ALJ

considered Listings 1.04 (disorders of the spine) and 12.04 (depressive, bipolar and related

disorders). (*Id.*) Plaintiff has the residual functional capacity ("RFC") to perform light work

except "she can frequently operate pedal controls; she can occasionally balance, stoop, kneel,

crouch, crawl, or climb ramps or stairs, but never climb ladders, ropes, or scaffolds; she can

perform unskilled tasks, work requiring little or no judgment to do simple duties that can be

learned on the job in a short period of time." (T. 24.) She is capable of performing past relevant

work as a housekeeper. (T. 28.) The ALJ therefore concluded Plaintiff is not disabled. (*Id.*)

### D.      The Parties' Briefings on Their Cross-Motions

Plaintiff contends she does not have the RFC to perform any work and argues the ALJ

did not properly weigh the medical opinions of record. Specifically, she claims the ALJ erred by

not giving great weight to the opinion of her primary care physician Herbert Savel, M.D., and

that the ALJ was obligated to re-contact Dr. Savel regarding alleged inconsistencies in his

opinion. (Dkt. No. 13 at 13-20.[2]) The ALJ also erred in giving too much weight to the

consultative opinion from Albert Paolano, M.D., and in not including limitations opined by

consultative examiner Thomas Osika, Ph.D., in the RFC. (*Id.* at 19-20, 27-28.) She claims she

is "disabled by her combination of a spinal impairment, pain, mental illness, pedal edema,

arthritis, extensive venous thrombotic embolism with deep vein thrombosis and pulmonary

embolism bilaterally, May-Thurner syndrome with iliocaval occlusion, acute on chronic anemia,

side effects from her medications, and obesity." (*Id.* at 20; *see also id.* at 21-35.) Plaintiff also

argues the ALJ erred by not finding the following conditions severe at Step Two: obesity, pedal

---

[2]      Page references to the parties' briefs identified by docket number refer to the page
numbers assigned by the Court's CM/ECF docketing system.

edema, extensive venous thrombotic embolism with deep vein thrombosis and pulmonary embolism bilaterally, and May-Thurner syndrome with iliocaval occlusion. (*Id*. at 33-35.) She asserts she is *per se* disabled pursuant to the Medical-Vocational Guideline Rules ("Grids") 201.12 and 201.14 because she is actually limited to sedentary work. (*Id*. at 35.) Finally, Plaintiff argues the ALJ erred in assessing her credibility. (*Id*. at 36-41.)

Defendant argues substantial evidence supports the ALJ's assessment of the medical opinions and the ALJ properly assessed Plaintiff's impairments and subjective complaints. (Dkt. No. 16 at 6-16.) Defendant also contends Plaintiff's Grids argument fails because the ALJ reasonably found Plaintiff was limited to light work. (*Id*. at 16.)

## II.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685

F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by

substantial evidence, the Commissioner's finding must be sustained "even where substantial

evidence may support the plaintiff's position and despite that the court's independent analysis of

the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153

(S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination

considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a *de novo*

review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an

individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.

The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If he is not, the
> [Commissioner] next considers whether the claimant has a "severe
> impairment" which significantly limits his physical or mental ability
> to do basic work activities.  If the claimant suffers such an
> impairment, the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed in
> Appendix 1 of the regulations.  If the claimant has such an

impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.    ANALYSIS

### A.    Substantial Evidence Supports the ALJ's Analysis of Plaintiff's Impairments at Step Two

#### 1.  Applicable Law

At Step Two, the ALJ must determine whether the claimant has a severe impairment that significantly limits her physical or mental abilities to do basic work activities.  20 C.F.R. § 416.920(c).  Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations.  *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Gibbs v. Astrue*, 07-CV-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. §§ 404.1521(b)(1)-(5)).  "Although the Second Circuit has held that this step is limited to 'screening out *de minimis* claims,' [] the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by

6

itself, sufficient to render a condition severe." *Taylor*, 32 F. Supp. 3d at 265 (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Overall, the claimant retains the burden of presenting evidence to establish severity. *Id.* (citing *Miller v. Comm'r of Soc. Sec.*, 05-CV-1371 (FJS/GJD), 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

This Court has indicated the failure to find a specific impairment severe at Step Two is harmless where the ALJ concludes (a) there is at least one other severe impairment, (b) the ALJ continues with the sequential evaluation, and (c) the ALJ provides an explanation showing she adequately considered the evidence related to the impairment that is ultimately found non-severe. *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing *Dillingham v. Astrue*, 09-CV-0236 (GLS/VEB), 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), *Report and Recommendation adopted by* 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding that any error in failing to find plaintiff's anxiety and panic disorder severe at Step Two would be harmless because the ALJ found other severe impairments present, continued through the sequential evaluation process, and specifically considered plaintiff's anxiety and panic attacks at those subsequent steps).

### 2. Analysis

At Step Two, the ALJ found Plaintiff's lumbar degenerative disc disease and affective disorder to be severe impairments. (T. 22.) Plaintiff argues the ALJ erred by not considering Plaintiff's obesity, pedal edema, and other impairments related to an embolism and deep vein thrombosis to be severe at Step Two. (Dkt. No. 13 at 33-35.) Plaintiff also contends she is disabled by the combination of her various impairments, obesity, pain, and side effects from her

medications.  (Dkt. No. 13 at 20, 28.)  The Court does not find these arguments persuasive for the following reasons.

First, although the ALJ did not explicitly discuss Plaintiff's obesity, the record does not support Plaintiff's argument that the ALJ should have found Plaintiff's obesity to be a medically determinable or severe impairment.  (Dkt. No. 13 at 33-35.)  For example, Plaintiff did not allege obesity in her initial application or testify to its effects on her functioning at the administrative hearing.  (T. 33-59, 61-62, 192.)  Further, while Plaintiff's treatment notes documented her weight and height, there is no specific diagnosis of obesity.  (T. 280, 282, 300-26.)

Social Security Ruling ("SSR") 02-1p, which was in effect at the time of the ALJ's January 2018 decision, indicates that in determining whether obesity is a medically determinable impairment, the Agency "will generally rely on the judgment of a physician who has examined the claimant and reported his or her appearance and build, as well as weight and height.  Thus, in the absence of evidence to the contrary in the case record, we will accept a diagnosis of obesity given by a treating source or a by a consultative examiner."  2002 WL 34686281, at *3 (Sept. 12, 2002).  The Court's review reveals that the record does not indicate a clear diagnosis or discussion of obesity by any examining or treating provider.  Consultative examiner Dr. Paolano noted Plaintiff's abdomen was obese, but indicated she was not found to have any significant limitation on examination.  (T. 290.)  Plaintiff's own treating provider Dr. Savel did not indicate a diagnosis of obesity or opine as to its effects on her functioning or other impairments in his medical source statement.  (T. 296-98.)  Because the record does not indicate obesity was a diagnosed or medically determinable impairment, the Court finds that any error by the ALJ in failing to explicitly consider Plaintiff's obesity or to find it a severe condition to be harmless.

Second, the ALJ's analysis indicates adequate consideration of Plaintiff's pedal edema and impairments related to deep vein thrombosis. (T. 23.) Plaintiff's treatment notes indicate pedal edema in 2015, 2016, and 2017 as well as swelling and eventual deep vein thrombosis related to a poorly healed left knee laceration occurring in May 2017. (T. 282, 304-06, 313-26, 355.) After a hospitalization and surgery in early June 2017, Plaintiff's edema was noted to have improved significantly at which time she was to follow-up with her primary care physician and another physician "for further determination of need for anticoagulation." (T. 373-439.) Plaintiff testified at the administrative hearing in November 2017 that she remained on anticoagulation medication Eliquis, but did not know if she still had blood clots. (T. 41-44.)

The ALJ summarized the records related to Plaintiff's deep vein thrombosis and noted Dr. Savel's June 19, 2017, treatment record which indicated she had considerable healing of the wound on her left knee. (T. 303.) The ALJ then explained that the record did not contain any documented treatment related to her deep vein thrombosis or pulmonary emboli after June 2017 and therefore Plaintiff had "not met her evidentiary burden of providing sufficient evidence to establish these impairments would result in more than minimal work-related limitation of function for at least 12 consecutive months." (T. 23.) The Court finds the ALJ therefore considered the evidence available to him and reasonably found these impairments were not severe. (*Id.*)

Third, the Court is not persuaded by Plaintiff's other arguments that obesity, pedal edema, or other impairments related to deep vein thrombosis should have been found severe. (Dkt. No. 13 at 33-35.) As indicated above, the ALJ's decision indicates a careful analysis of Plaintiff's impairments despite not explicitly considering obesity. (T. 22-23.) Further, the ALJ did find at least one severe impairment and continued the sequential evaluation. (T. 22-28.) The

Court therefore finds remand is not required on the basis of Plaintiff's arguments related to the

ALJ's analysis at Step Two.

**B.**     **Substantial Evidence Supports the ALJ's Analysis of the Opinion Evidence and Plaintiff's RFC and Symptoms**

### 1.   Applicable Law

#### a.   RFC

RFC is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC

is the individual's maximum remaining ability to do sustained work activities in an ordinary

work setting on a regular and continuing basis . . . ."   A "regular and continuing basis" means

eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, 11-

CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*,

198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling ("SSR") 96-8p, 1996 WL

374184, at *2)).

#### b.   Treating Physician

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R.

§ 416.927(c).  "'[T]he opinion of a claimant's treating physician as to the nature and severity of

the impairment is given 'controlling weight' so long as it is 'well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in the case record.'"  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015)

(quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  However, " . . . the opinion of the

treating physician is not afforded controlling weight where . . . the treating physician issued

opinions that are not consistent with other substantial evidence in the record, such as the opinions

of other medical experts."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian*, 708 F.3d at 418). However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527(c) is required. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran,* 362 F.3d at 31-32); *see also Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 416.927(c)(1)-(6).

### c. Evaluation of Symptoms

In evaluating a claimant's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ must "'carefully consider'" all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors "including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); SSR 16-3p)). SSR 16-3p provides that the evaluation of symptoms

involves a two-step process.[3]  2017 WL 5180304, at *2.  The Social Security Administration

("SSA") "will first consider whether there is an underlying medically determinable physical or

mental impairment(s) that could reasonably be expected to produce an individual's symptoms."

*Id*. at *3.  "[O]nce an underlying physical or mental impairment(s) that could reasonably be

expected to produce an individual's symptoms is established, [the SSA will then] evaluate the

intensity and persistence of those symptoms to determine the extent to which the symptoms limit

an individual's ability to perform work-related activities . . . ."  *Id*.  If the SSA cannot make a

disability determination or decision that is fully favorable based solely on objective medical

evidence, it will "carefully consider other evidence in the record in reaching a conclusion about

the intensity, persistence, and limiting effects of an individual's symptoms."  *Id*. at *6.

In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, factors

to be considered include: (1) claimant's daily activities; (2) location, duration, frequency, and

intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage,

effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment

received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and

(7) any other factors concerning claimant's functional limitations and restrictions due to

symptoms.  20 C.F.R. § 416.929(c)(3); SSR 16-3p, 2017 WL 5180304, at *7-8.

---

[3]    The Court notes that the standard for evaluating subjective symptoms has not changed in
the regulations.  Rather, use of the term "credibility" has been eliminated and SSR 16-3p makes
it clear that the subjective symptom evaluation is not an evaluation of the claimant's character.
2017 WL 5180304.  SSR 16-3p is applicable on March 28, 2016, pre-dating the ALJ's January
2018 decision.  *Id*.

## 2. Relevant Opinion Evidence

Plaintiff's primary care physician Dr. Savel provided several statements regarding Plaintiff's condition and functioning.  In a November 2015 treatment note, he indicated she was symptomatically disabled for her usual occupation or for any occupation at that time based upon her persistent low back pain despite having had surgery for her low back pain in 1990.  (T. 280, 282.)  In January 2017, Dr. Savel completed a medical source statement and noted monthly visits since 2014 with diagnoses including severe back pain, arthritis in the lumbar spine, and disc bulging at L4-L5.  (T. 296-98.)  He noted Plaintiff's symptoms included bilateral radiculopathy into the lower extremities and she had difficulty sitting or standing for any period of time secondary to pain.  (T. 296.)  Dr. Savel also noted clinical findings included MRI findings showing an L4-L5 severe loss of disc height, mild annular bulging, mild left foraminal narrowing, L5-S1 annular bulging, central disc protrusion, severe right and mild left neuroforaminal compromise, and L4-L5 focal sclerosis.  (*Id*.)  He indicated she must use a cane or other assistive device while engaging in occasional standing/stalking.  (*Id*.)

Dr. Savel opined Plaintiff could stand/walk and sit for up to two hours each, rarely lift less than 10 pounds, never twist, stoop or climb ladders, and rarely crouch/squat and climb stairs.  (T. 297.)  He opined no significant limitations with reaching, handling or fingering, but subsequently indicated she could use her hands and fingers only 25 percent of the time and her arms only five percent of the time.  (*Id*.)  Dr. Savel opined Plaintiff's pain or other symptoms were frequently severe enough to interfere with attention and concentration needed to perform even simple work tasks and she was incapable of even low stress jobs, noting she also suffered from chronic severe pain and depression.  (T. 298.)  Dr. Savel indicated Plaintiff would be absent more than four days per month and her symptoms had been present since approximately 2012.

(*Id.*)  In June and July 2017 treatment notes, Dr. Savel again indicated she was unable to work in any capacity at that time and had very limited ability to do any physical work which was all she was capable of doing.  (T. 301-02.)

The ALJ noted the medical evidence did not support the limitations assessed by Dr. Savel including his own treatment records.  (T. 25.)  The ALJ afforded little weight to Dr. Savel's opinion because "it is unsubstantiated by the medical evidence, which only shows limited range of motion and muscle spasm, but no electrophysiologic evidence of radiculopathy, documented neurologic deficits, or gait abnormality."  (T. 26.)  The ALJ also noted Plaintiff had "only conservative care though Tramadol, with no documented physical therapy, chiropractic care, injections or nerve blocks, or other modalities of treatment.  This lack of supporting findings and history of conservative care is not consistent with the degree of limitations set forth in Dr. Savel's statements."  (*Id.*)  The ALJ further noted that, during his treatment of Plaintiff, Dr. Savel did not order his own imaging of her lumbar spine or refer her to an orthopedist, neurologist, pain management or other specialist for evaluation.  (*Id.*)

In November 2015, Plaintiff underwent a consultative examination performed by Dr. Paolano.  (T. 286-91.)  He found she did not have any significant limitation on examination with x-rays of her right knee and right hand showing no significant abnormality.  (T. 290.)  The ALJ afforded significant weight to this opinion because "it was formed through personal evaluation of the claimant and is consistent with his clinical findings."  (T. 26-27.)  The ALJ also noted that "[b]ased on the subsequent findings by Dr. Savel of limited range of motion and muscle spasm, [he found] that the claimant has greater limitation than estimated by Dr. Paolano."  (T. 27.)

In February 2016, Plaintiff underwent a psychological consultative examination conducted by Thomas Osika, Ph.D.  (T. 292-95.)  Dr. Osika noted Plaintiff was cooperative and

had coherent and logical speech, fair insight and judgment, intact recent and remote memory, and impaired attention. (T. 294.) He diagnosed major depressive disorder (recurrent, moderate). (*Id.*) He indicated Plaintiff would have mild-to-moderate difficulty with simple tasks, severe difficulty with complex tasks, and mild-to-moderate difficulty interacting with people in the workplace. (T. 295.) The ALJ afforded great weight to this opinion "as it was formed through personal evaluation of the claimant" but indicated he did not find Plaintiff's "mental impairments have caused more than mild limitation for simple work or interacting with others based on her lack of treatment for her mental impairments during the period at issue[.]" (T. 27.)

As part of the initial determination in March 2016, non-examining state Agency consultant J. Ochoa, Ph.D., indicated Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in concentration, persistence or pace, and no repeated episodes of decompensation of extended duration. (T. 66, 60, 68-70.) Dr. Ochoa also indicated Plaintiff was able to complete simple and mildly complex tasks with sustained attention and pace tolerance, could interact with coworkers, supervisors and the public to meet work needs, and could adapt to work-related changes and make work-related decisions. (T. 70.) The ALJ afforded great weight to this opinion "as it is consistent with that of Dr. Osika and the totality of the record." (T. 27.)

### 3. Analysis

Plaintiff argues the ALJ erred in not giving sufficient weight to Dr. Savel's opinion or to the findings and opinions of the Agency's own consultants. (Dkt. No. 13 at 13-20, 27-28.) Specifically, Plaintiff contends the ALJ discredited Dr. Savel because of seemingly contradictory findings regarding the use of Plaintiff's arms, hands and fingers and because he stated he had been treating Plaintiff since February 2014, but her symptoms were present since approximately

2012. (*Id*. at 18.) Plaintiff further argues the ALJ erred in giving too much weight to Dr.

Paolano's consultative report and in not including the mental limitations opined by Dr. Osika and

Dr. Ochoa in the RFC. (*Id*. at 19-20, 27-28.) Plaintiff contends the ALJ did not consider

limitations caused by pedal edema and erred by determining she could frequently operate pedal

controls and did not have any limitations in walking. (*Id*. at 35.) Plaintiff further argues she

continues to be limited by her deep vein thrombosis and pulmonary embolism bilaterally and

May-Thurner syndrome at the time of the hearing and the ALJ failed to follow-up with

Plaintiff's treating physician or include resulting limitations in the RFC. (*Id*. at 34.) Finally,

Plaintiff contends the ALJ erred by not considering the limitations on her RFC caused by her

lower back pain and failing to credit her subjective testimony of pain or address whether her

obesity adds to her credibility. (Dkt. No. 13 at 23-27, 32, 36-41.) The Court does not find these

arguments persuasive for the following reasons.

First, Plaintiff explains that Dr. Savel did not intend to state Plaintiff did not have

limitations with reaching, handling, or fingering. (Dkt. No. 13 at 18; T. 296-98.) Plaintiff also

argues the ALJ was obligated to re-contact Dr. Savel regarding any inconsistencies and the ALJ

failed to request Dr. Savel's records from prior to September 2015. (*Id*. at 19.) However, the

ALJ adequately explained the reasons for affording little weight to Dr. Savel's opinion, including

that it was unsubstantiated by the medical evidence and Plaintiff's history of conservative care.

(T. 26.) Further, the ALJ did note the "seemingly contradictory findings" in Dr. Savel's medical

source statement, but it appears the ALJ still properly considered the opinion and implicitly

found any limitations in reaching, handling and fingering not supported by the evidence. (T. 24-

25.) Because such an inconsistency did not prevent him from otherwise properly considering Dr.

Savel's opinion or determining Plaintiff's RFC, the ALJ was not obligated to recontact Dr. Savel

or request further records from him.  *See Rolon v. Comm'r of Soc. Sec.*, 994 F.Supp.2d 496, 505 (S.D.N.Y. Jan. 22, 2014) ("Since an ALJ's duty to seek clarification applies only to a conflict or ambiguity that *must* be resolved to make the disability determination, minor or irrelevant inconsistencies do not require an ALJ to act upon the duty to further develop the record.") (emphasis in original).

Second, Plaintiff does not fully explain how the ALJ erred by giving too much weight to Dr. Paolano's report beyond noting Dr. Paolano documented Plaintiff's complaints of pain and lack of limitations in range of motion, but he did not give an opinion on her pain, did not consider the MRI, and did not review any medical records.  (Dkt. No 13 at 19; T. 286-91.) However, the ALJ adequately explained the reasons for the weight given to Dr. Paolano's opinion and noted he included greater limitations than those estimated by Dr. Paolano given the subsequent findings by Dr. Savel.  (T. 27.)  Further, in assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability.  20 C.F.R. § 416.927(e); *see Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

Third, the ALJ adequately considered the opinions from Dr. Osika and Dr. Ochoa and properly accounted for their findings in the RFC.  (T. 66, 68-70, 292-95.)  The ALJ explained he

did not find Plaintiff's mental impairments to "have caused more than mild limitation for simple work or interacting with others based on her lack of treatment for mental impairments during the period at issue[.]" (T. 27.) The ALJ therefore reasonably limited Plaintiff to "unskilled tasks, work requiring little or no judgment to do simple duties that can be learned on the job in a short period of time." (T. 24.)

Fourth, as discussed *supra* in Section III.A. of this Decision and Order, the ALJ properly considered Plaintiff's impairments at Step Two, including obesity and impairments related to deep vein thrombosis and pedal edema. (T. 23.) Although, Plaintiff maintains she continues to be limited by her deep vein thrombosis and pulmonary embolism bilaterally and May-Thurner syndrome, the ALJ considered the evidence and reasonably found she had not met her evidentiary burden of providing sufficient evidence to establish these impairments would result in more than minimal work-related limitation of function for at least 12 consecutive months. (T. 23.) The Court will not now reweigh that evidence. *See Warren v. Comm'r of Soc. Sec.*, 15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing . . . . [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'"), *Report and Recommendation adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016) (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996)); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health & Human Services*, 705 F.2d 638, 642 (2d Cir. 1983)).

Finally, the ALJ's analysis indicates he adequately considered Plaintiff's pain and statements regarding her symptoms. (T. 24-27.) The ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (T. 25.) The ALJ subsequently stated he found Plaintiff's allegations "partially supported by the medical evidence, as she has a history of treatment for back pain" but that "the record does not show clinical signs entirely consistent with the claimant's complaints and she has not had more than very conservative care with medication for her allegedly disabling back pain, and an EMG study showed no radiculopathy." (T. 26, 27, 265-69.) The Court's review of the record does not contradict these reasons, including Plaintiff's treatment with medication and lack of difficulty ambulating. (T. 25, 258-69, 279-80, 290, 299-327.) Therefore, the Court finds the ALJ provided sufficiently specific reasons for his credibility finding and/or evaluation of Plaintiff's symptoms, including pain. Again, as discussed *supra* in Section III.A. of this Decision and Order, the Court finds any error by the ALJ in failing to explicitly discuss obesity to be harmless because the record does not indicate a clear diagnosis of obesity or any related limitations. (T. 290, 296-98.)

For the reasons above, the Court finds the ALJ's analysis of the medical opinions and Plaintiff's impairments, RFC, and credibility is supported by substantial evidence. Remand is therefore not required on these bases.

### C. Substantial Evidence Supports the ALJ's Step Four Determination

#### 1. Applicable Law

"[T]he Commissioner asks, at Step Four, 'whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform . . . her past work.'" *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (quoting *Shaw v. Chater,* 221 F.3d 126, 132 (2d Cir.

2000)) (internal citations omitted). "[T]he claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." *Jasinski v. Barnhart,* 341 F.3d 182, 185 (2d Cir. 2003) (citing *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981); SSR 82-62).

### 2. Analysis

At Step Four, the ALJ found Plaintiff is capable of performing past relevant work as a housekeeper based on the vocational expert's testimony. (T. 28, 53.) Plaintiff argues she is *per se* disabled pursuant to Medical-Vocational Rules 201.12 and 201.14 as a high school graduate without education providing for direct entry into skilled work; she was 50 years old at the date of her application, without past skills that are transferable; and she is being limited to sedentary work. (Dkt. No. 13 at 35.) As indicated *supra* in Sections III.A. and III.B. of this Decision and Order, the Court finds the ALJ's RFC for a modified range of light work to be supported by substantial evidence. Plaintiff's arguments regarding disability based on a sedentary RFC are therefore not persuasive and remand is not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED** that Plaintiff's Complaint is **DISMISSED**.

Dated: February 12, 2020
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge